### JOHN BELCHER & others *vs.* ALONZO FARRAR.

Under Gen. Sts. *c.* 26, § 52, the selectmen of a town, acting as a board of health, may by a general order forbid the exercise of an offensive trade or employment therein, without first giving notice to those who at the time are engaged in carrying on the same.

BILL IN EQUITY brought by the selectmen of the town of Winthrop, acting as a board of health, there being no board of health chosen by the inhabitants of said town, praying that the defendant might be restrained from operating his works for the manufacture of kerosene oil therein. A temporary injunction was issued, and afterwards dissolved.

At the hearing in this court, before the chief justice, it appeared that the defendant was engaged in the manufacture of kerosene oil in that town, and on the 29th of May 1862 the selectmen, acting as a board of health, passed a general order, determining that the making of kerosene oil was a nuisance, and dangerous to the public health in the town, and attended by noisome and injurious odors, and otherwise injurious to the estates of the inhabitants, and forbidding the exercise of such trade or employment within the limits of the town; that said order was recorded in the records of the town on the same day; and that no prior notice was given to the defendant, but a notice of the passing of the order was served upon him on the 7th of June 1862.

The question was reserved for the determination of the whole court, whether the selectmen, acting as a board of health, had authority to pass said order, so as to be binding on the defendant, without first giving him notice.

*G. A. Somerby*, for the plaintiffs, cited Gen. Sts. *c.* 26, §§ 52–60; *St.* 1855, *c.* 391; Rev. Sts. *c.* 21; *Commonwealth* v. *Howe*, 13 Gray, 30; *Herrick* v. *Smith*, 1 Gray, 18; *Commonwealth* v. *Alger*, 7 Cush. 86; *Commonwealth* v. *Tewksbury*, 11 Met. 58; *Baker* v. *Boston*, 12 Pick. 193.

*E. D. Sohier & B. F. Brooks*, for the defendant. The power conferred by Gen. Sts. *c.* 26, § 52, to suppress a trade when deemed injurious to estates, by an act legislative in its nature, could never have been intended to be vested in selectmen. See *Rogers* v. *Barker*, 31 Barb. 447; *Reed* v. *The People*, 1 Parker's Crim. Cas. 481. A trade is not a nuisance *per se;* whether it is a nuisance or not depends upon circumstances. The power to suppress a trade is judicial only. The statute contemplated the action of the board of health in each individual case. The plaintiffs have gone far beyond their authority, and their action is therefore wholly void. *Austin* v. *Murray*, 16 Pick. 121. The power conferred by the statute, being judicial, cannot be exercised without notice to parties interested; especially to those actually engaged in carrying on the trade in question. *Commonwealth* v. *Cambridge*, 4 Mass. 627. *Chase* v. *Hathaway*, 14 Mass. 222.

*Hathaway* v. *Clark*, 5 Pick. 490. *Allis* v. *Morton*, 4 Gray, 63. *New Jersey Turnpike* v. *Hall*, 2 Harrison, (N. J.) 337. *Youngs* v. *Overseers of Hardiston*, 2 Green, (N. J.) 517. *Bouton* v. *Neilson*, 3 Johns. 474. Even if the power was *quasi* legislative, notice should have been given. *People* v. *Board of Health of New York*, 33 Barb. 344.

BIGELOW, C. J. There can be no doubt that the order of the selectmen on which these proceedings are based was passed in conformity to the letter of the statute under which they purported to act. By Gen. Sts. *c.* 26, § 52, they are expressly authorized and empowered, in their capacity as a board of health, to forbid the exercise of any trade or employment within the limits of the town for which they are chosen, " which is a nuisance or hurtful to the inhabitants, or dangerous to the public health, or the exercise of which is attended by noisome and injurious odors, or is otherwise injurious to their estates." We think it equally clear that the power thus vested in them is in its nature *quasi* judicial. Its exercise necessarily involves the determination of the question whether a particular trade falls within the category contemplated by the legislature in the enactment before cited, and requires the officers charged with the duty to use their discretion and judgment in adjudicating on the subject matter. This is the decisive test that the authority vested in them is judicial and not ministerial merely. *Ela* v. *Smith*, 5 Gray, 121, 136. But it does not follow, because the selectmen were called on to act judicially in the premises, that their proceedings, so far as they affected the rights and property of the defendant, were illegal and invalid. It is true that no previous notice was given to him of their intention to adjudicate on the subject matter. But in a case like the present we do not think such preliminary notice essential to the exercise of the jurisdiction conferred by law. The statute under which the selectmen acted requires no notice or summons to be issued to any party interested. This, however, would be by no means decisive, if the doings of the selectmen were final and conclusive upon the defendant, so that no means or opportunity was left open to him to review their adjudication, or to litigate the

question whether the use of his property for the manufacture of a particular article could properly be deemed a fit subject for prohibition under the provisions of the statute. If such was the necessary result of the exercise of the jurisdiction conferred on the selectmen acting as a board of health, we cannot doubt that a preliminary notice would be essential to the validity of any adjudication by them, restricting the use of private property. It would violate one of the fundamental principles of justice to deprive a party absolutely of the free use and enjoyment of his estate under an allegation that the purpose to which it was appropriated, or the mode of its occupation, was injurious to the health and comfort of others, and created a nuisance, without giving the owner an opportunity to appear and disprove the allegation, and protect his property from the restraint to which it was proposed to subject it. But on looking at the provisions of the statute, it will be found that proceedings under Gen. Sts. *c.* 26, §§ 52, 55–60, before selectmen acting as a board of health, though summary in their nature, are not final or conclusive on the rights of parties thereby affected, but are only of a preliminary and initiatory character, and that ample provision is made by which an owner of property, who may be affected by any order or decree which the selectmen may pass, may obtain a revision of their adjudication, and its modification or reversal if it is unjust or erroneous. By § 56, any persons aggrieved by an order of the selectmen may appeal therefrom, and have the whole matter involved in the issue tried by a jury, who by § 58 have power to alter, annul or affirm the order.

But it is objected that pending such appeal the order of the selectmen is peremptory and obligatory, and the owner may thereby be deprived for a period of time of the use of his property, without having had any previous notice of the intention to pass such order, or any opportunity to be heard on the question whether the trade or manufacture carried on by him is such as to bring it within the class which the selectmen have authority to prohibit within the limits of the town. This is certainly so. It is expressly provided by § 57 that such trade or employment shall not be exercised contrary to the order, during the pendency

of the appeal. But such a temporary suspension of the right to the free use of property is not only not inconsistent with the principles of natural justice, but is in accordance with the well settled course of judicial proceedings in analogous cases. All general rules and maxims of government and law, founded on abstract truths, are necessarily subject to certain qualifications and modifications, which are essential to adapt them to each other and secure their harmonious operation as applied to the practical affairs of life. The unrestrained enjoyment of property by its owner is an abstract right, but it is to be exercised in subordination to another rule equally clear, embodied in the maxim, *Expedit reipublicæ ne sua re quis male utatur.* So the right of the subject to the liberty of his person is indisputably clear; but it cannot be enjoyed if the good of society requires his restraint, or if the rights of others will be endangered or lost if he is permitted to go free. It is therefore no violation of principle to suspend the appropriation of private property to a particular use alleged to be hurtful and injurious to others, until it can be ascertained judicially whether such allegation is well founded; nor can it be said to be an unlawful infringement of the liberty of the citizen to arrest him on a charge of crime, or on an allegation of injury to the person or property of third persons, until it can be determined whether his release will be consistent with the peace and good order of society, or a due regard to the security and preservation of the rights of others. It is upon this ground that courts of equity are empowered to issue injunctions to restrain the use of property, and courts of law are authorized to issue writs and warrants for the arrest of the person. Such processes are only preliminary. They do not conclude the rights of parties, but are merely the initiatory steps in the administration of justice, which, when followed up in due course of law, will lead to judgments by which those rights can be finally adjudicated and settled. Of this nature are the proceedings in controversy in the present case. The prohibition of the selectmen under § 52 is intended to operate only as a temporary suspension of the use of property, if the owner sees fit to appeal, and to submit the question whether the trade or

employment which he exercises thereon is a nuisance, or hurtful or injurious to the inhabitants or their estates, to a judicial trial and determination.

It seems to us that such a provision is not only not unreasonable, but, looking at the purpose of the statute and the object which it was designed to accomplish, is necessary and expedient to secure its effective operation. If, as preliminary to the exercise of any jurisdiction over the subject matter, the selectmen were required to give notice to all persons exercising offensive trades or employments within the limits of the town, of their intention to prohibit the continuance of them, it would follow necessarily that such persons would have a right to appear and object, and ask for a hearing and trial on the question whether the use of their property was hurtful or noxious, so as to fall within any of the classes contemplated by the statute. This would often lead to protracted examinations, which might occupy days or weeks. If in the mean time the alleged offensive and noisome trades might be carried on, great injury to health might be occasioned, and it would be impossible to prevent the evils which it was the manifest object of the statute promptly to suppress.                    *Case to stand for hearing.*